PD-0794-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/26/2015 4:58:52 PM
Accepted 6/29/2015 3:58:34 PM
ABEL ACOSTA
CLERK

NO. PD-\_\_\_\_\_-15

# IN THE
# COURT OF CRIMINAL APPEALS
# OF TEXAS

_____

## ESSIE D. HOPKINS
Appellant/Petitioner
vs.
## THE STATE OF TEXAS,
Appellee/Respondent

_____

## APPELLANT'S PETITION FOR
## DISCRETIONARY REVIEW

_____

Cause No. 05-14-00146-CR
Court of Appeals, Fifth District
At Dallas, Texas

_____

Lawrence B. Mitchell
SBN 14217500
P.O. Box 797632
Dallas, Texas 75379
Tel. No. 214.870.3440
E-mail: judge.mitchell@gmail.com

Attorney for Petitioner/Appellant

FILED IN
COURT OF CRIMINAL APPEALS

June 29, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

PRESIDING JUDGE: The Honorable Jennifer Balido, 291st District Court
Dallas County, Texas

PARTIES: Essie D. Hopkins, Appellant/Petitioner

The State of Texas, Appellee/Respondent

Counsel: **Trial counsel for appellant**:
Larry Baraka, 1215 E. McKinney Street, Ste. 203
Denton, Texas 76209

**Appellate Counsel for appellant**:
Lori Ordiway (now employed by the Dallas County
District Attorney's Office)
133 N. Riverfront Blvd., Dallas, Texas 75207

**Petition for Discretionary Review Counsel**:
Lawrence B. Mitchell, P.O. Box 797632,
Dallas, Texas 75379

**Trial counsel for the State**:
Assistant District Attorneys:
Jeff Matovich and Robin Pittman
133 N. Riverfront Blvd., Dallas, Texas 75207

**Appellate and Petition counsel for the State**:
Assistant District Attorney Marisa Elmore;
Susan Hawk, Criminal District Attorney, Dallas County,
Texas or her designated representative,
133 N. Riverfront Blvd., Dallas, Texas 75207

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel...............................................................i

Table of Contents ......................................................................................ii

Index of Authorities..................................................................................iii

Statement Regarding Oral Argument.........................................................1

Statement of the Case ...............................................................................2

Statement of Procedural History...............................................................2

Ground for Review: ..................................................................................3

## I.

### *THE COURT OF APPEALS ERRED IN FINDING THE EVIDENCE SUFFICIENT TO PROVE THE ENHANCEMENT ALLEGATIONS*

Argument...................................................................................................3

Prayer for Relief........................................................................................8

Certificate of Word-Count Compliance.....................................................9

Certificate of Service.................................................................................9

Appendix

# INDEX OF AUTHORITIES

## Cases:

*Ex Parte Rich*, 194 S.W.3d 508 (Tex. Crim. App. 2006)..........................................7

*Jordan v. State*, 256 S.W.3d 286 (Tex. Crim. App. 2008)........................................4

*Mikel v. State*, 167 S.W. 3d  556 (Tex. App. - Houston [14th Dist.] 2005)...............7

*Roberson v. State*, 420 S.W.3d 832 (Tex. Crim. App. 2013)...................................5

*Sanders v. State*, 785 S.W. 2d 445 (Tex. App. - San Antonio 1990).......................7

*Wilson v. State*, 671 S.W.2d 524 (Tex. Crim. App. 1984).......................................5

## STATUTES:

TEX. PENAL CODE §29.03 (a) (2) & (b)...............................................................2

## Texas Rules of Appellate Procedure:

TEX. R. APP. P. 66.3 (c).............................................................................................8

TEX. R. APP. P. 9.4 (i) (3)..........................................................................................9

TEX. R. APP. P. 9.4 (i) (1)..........................................................................................9

TEX. R. APP. P. 9.4 (i) (2) (D)....................................................................................9

# STATEMENT REGARDING ORAL ARGUMENT

Appellant waives Oral Argument because the issue presented can be resolved by review of the Petition for Discretionary Review, any Response, and the respective briefs of the parties.

## STATEMENT OF THE CASE

In Cause No. F13-55764-U Appellant was charged by indictment returned by the Dallas County Grand Jury with the first degree felony offense of aggravated robbery. The case was assigned to the 291st District Court for disposition. The indictment alleged an offense prohibited by **TEX. PENAL CODE §29.03 (a) (2) & (b).** The penalty ranged was enhanced with allegation of two previous felony convictions. [CR: 14, 17]. Appellant entered a plea of "Not Guilty" before the jury. [RR 3: 9, 12-13]. Based upon appellant's plea and the evidence presented, the jury found appellant guilty of the offense of aggravated robbery. [CR: 36: RR 4: 53].

Punishment issues were submitted to the district court. Appellant entered a plea of "True" to both enhancement allegations. The district court entered a "True" verdict to each of the enhancement allegations and punishment was set at confinement in the penitentiary for life. Notice of appeal was timely given. [CR: 43].

## STATEMENT OF PROCEDURAL HISTORY

The appeal was presented to the Court of Appeals for the Fifth District Texas at Dallas in Cause No. 05-14-00146-CR. The unpublished opinion was delivered May 28, 2015. No Motion for Rehearing was filed. The Petition for Discretionary Review

2

is due to be filed on or before June 29, 2015.

## GROUND FOR REVIEW

### I.

### *THE COURT OF APPEALS ERRED IN FINDING THE EVIDENCE SUFFICIENT TO PROVE THE ENHANCEMENT ALLEGATIONS*

## ARGUMENT

Appellant was indicted for the first degree felony offense of aggravated robbery. The indictment alleged a single enhancing paragraph containing one felony conviction. [CR: 14]. In a separate pleading the State alleged another felony conviction. [CR: 17]. At trial appellant entered a plea of "True" to both enhancement allegations. [RR 5: 7-8]. The State did not offer penitentiary packets to provide proof of the prior convictions.

The enhancement allegation in the indictment alleged that the prior conviction, for aggravated assault, occurred prior to the commission of the offense "...set out above..." clearly referring to the indicted offense. [CR: 14]. The date alleged was August 29, 2003 and the convicting court was the 195th District Court of Dallas County, Texas.

The notice pleading is not so clear as to the date of conviction or the sequence of the conviction as related to the indicted offense or the indictment's enhancement allegation. [CR: 17]. That pleading alleges that "...prior to the commission of the "aforesaid offense" appellant was convicted of the offense of aggravated assault on "January 4th" in Criminal District Court No. 3 in Dallas County, Texas. Whether the "aforesaid offense" is the offense for which appellant was indicted or the offense for which he was previously convicted is not specifically pled. Beyond question, though, the pleading fails to state the date of the prior conviction other than reference to a day without reference to the year of the conviction.

Appellant argued below that his pleas of "True," without other evidence, did not prove that the two enhancing allegations were sequential [i.e, conviction, commission, conviction]. See *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008). The two pleadings, the indictment and the Notice pleading, did not clearly allege the sequence of the conviction either to the indicted offense or the first enhancement allegation. But regardless of the infirmity in the pleading, the Notice pleading clearly did not, on its face, allege by date and year that appellant was convicted for the second offense prior to the finality of the first enhancement conviction. No record evidence was introduced proving the sequential nature of the two convictions.

4

In resolving the issue adversely to appellant, the court of appeals cited to only two prior decisions by this Honorable Court. The first is irrelevant to the issue presented and the second, in fact, is favorable to appellant's complaint.

The first case cited by the court of appeals is *Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984). While the court of appeals correctly notes that the case stands for the proposition that a plea of "True" is evidentiary in nature and sufficient to prove an enhancement allegation, it does not resolve the issue presented by appellant or even address it. Wilson's information (he was charged with a misdemeanor offense) contained only a single enhancement allegation. The question as to whether a plea of "True" to two sequential enhancement allegation was sufficient to prove the sequence of the convictions was not presented nor resolved in the appeal.

The court of appeals cites to a second case: *Roberson v. State*, 420 S.W.3d 832 (Tex. Crim. App. 2013). The court of appeals cites this case for the proposition that appellant by "...(p)leading true to the enhancement allegation *and the sequence of the convictions*, appellant relieved the State of the burden to prove the prior convictions. See *Roberson*, 420 S.W.3d at 838." (Slip opinion at p. 10) (emphasis supplied). *Roberson* does not so hold; if anything it holds the opposite: that a plea of true, standing alone, is not sufficient evidence to prove the sequence of enhancement

allegations.

In *Roberson* the defendant was accused by an indictment with a felony offense which also contained two allegations of prior, felony convictions. However, the enchantment allegations were transposed: the older conviction was alleged first and the newer conviction was alleged second. When the indictment allegations were read to the jury the prosecutor read them in reverse order so that the newer conviction was read first followed by the older conviction. The defendant did plead "True" to both allegations as read by the prosecutor.

Roberson argued on direct appeal, and then by way of Petition for Discretionary Review, that the evidence did not prove the proper sequence of conviction because of the order in which they were pled in the indictment. The court of appeals, as did this Honorable Court, found against Roberson. However, the basis of the rulings was not that the proper sequence of conviction was proven by the "True" pleas. Rather the court of appeals and this Court looked to the evidentiary record to determine if the proper sequence had been proven. Both courts held that the record affirmatively established that Roberson's prior convictions met the statutory chronology requirement for the habitual offender punishment range. Roberson's record evidence contained penitentiary packets that established that the two convictions did in fact occur in the required order. "Thus the state met its burden as

6

the evidence is sufficient to prove the statutorily required sequence of conviction in order for (Roberson's) punishment range to be enhanced to that of a habitual offender." *Roberson*, 420 S.W.3d at 840. The pleas of "True" standing alone did not, in that case, prove the proper chronology.

In *Ex Parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006) the Court noted the general rule that a plea of "True" to an enchantment allegation relieves the State of its burden of proving the prior conviction. However, the Court recognized that there was an exception to that general rule "...when the record affirmatively reflects that the enhancement itself was improper. *Id*; also see *Mikel v. State*, 167 S.W. 3d 556, 558-59 (Tex. App. - Houston [14th Dist.] 2005) and *Sanders v. State*, 785 S.W. 2d 445, 448 (Tex. App. - San Antonio 1990).

In the instant cause, the enhancing pleading failed to contain a reference to the year date of the second enhancing conviction. The State did not offer any evidence into the record that proved the proper chronology of the two conviction. Since the record affirmatively establishes that the state did not prove the appropriate chronology, appellant properly attacked the sufficiency of the evidence to prove the viability of the second enhancing conviction.

Discretionary Review may be granted if the opinion of the court of appeals has decided an important question of State law which conflicts with the applicable

7

decisions of the Court of Criminal Appeals. **See TEX. R. APP. P. 66.3 (c)**. The court

of appeals held that a plea of "True" to two enhancement allegations, standing alone,

is sufficient to prove the chronology of the two convictions. The decisions of the

Court of Criminal Appeals make clear that such pleas will not be sufficient, alone,

to prove the chronology of the enchantment convictions when the record

affirmatively demonstrates that the State has failed to prove the proper sequence of

the two enhancement convictions. Proper Reason for Review has been presented.

## PRAYER FOR RELIEF

Appellant prays that this Honorable Court grant this Petition for Discretionary

Review and order further briefing by the parties.

Respectfully submitted,

/s/Lawrence B. Mitchell

Lawrence B. Mitchell
SBN 14217500
P.O. Box 797632
Dallas, Texas 75379
214.870.3440
judge.mitchell@gmail.com

Counsel for Petitioner/Appellant

8

## CERTIFICATE OF WORD-COUNT COMPLIANCE

I hereby certify, in compliance with Rule 9.4 (i) (3) of the Texas Rules of Appellate Procedure, that this document contains 1,444 words, including all contents except for the sections of the Petition to be excluded by Rule 9.4 (i) (1) of the Texas Rules of Appellate Procedure, and in compliance with Rule 9.4 (i) (2)(D) of the Texas Rules of Appellate Procedure.


/s/ Lawrence B. Mitchell


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Petition for Discretionary Review is being served of this the 26th day of June, 2015 via the service function in eFile Teas, on the attorneys for the State: (1) Patricia Noble, Assistant District Attorney, Dallas County, Texas to pnoble@dallascounty.org and (2) the State Prosecuting Attorney at information@spa.texas.gov.


/s/ Lawrence B. Mitchell

# APPENDIX

Court of Appeals of Texas,

Dallas.

Essie D. Hopkins, Appellant

v.

The State of Texas, Appellee

No. 05–14–00146–CR

Opinion Filed May 28, 2015

On Appeal from the 291st Judicial District Court

Dallas County, Texas

Trial Court Cause No. F–1355764–U

Before Justices Lang, Stoddart, and Schenck

**MEMORANDUM OPINION**

Opinion by Justice Stoddart

A jury convicted Essie D. Hopkins of aggravated robbery. Hopkins pleaded true to enhancement allegations and the trial court assessed punishment at life imprisonment. Hopkins raises three issues on appeal, arguing the evidence is insufficient to prove he committed the offense, the jury charge defined robbery under a different theory than alleged in the indictment, and the evidence is insufficient to prove the enhancement allegations.

We affirm the trial court's judgment.

1

Background

Connie Witrago returned home from work on March 3, 2013. As she walked from the parking lot to her apartment at the back of the complex, a man approached her and grabbed her purse. She struggled with the man for a while until the purse broke and the man ran away with it. Witrago chased after him, but the man pulled out a gun and fired it at her. She thought he was going to kill her, but the bullet missed her. The man fled the scene and Witrago called 911. Witrago did not get a good look at the man's face, but noticed he was tall and thin. She did get a good look at his eyes, which she described as big and yellow. Police found a fired .380 caliber cartridge casing in the grass near Witrago's apartment.

Two months after the robbery, Witrago's son told her the police were arresting a man in the apartment parking lot. Witrago ran to the parking lot and immediately recognized Hopkins as the man who robbed her. She thought Hopkins recognized her as well. She told the police officer she was fairly certain Hopkins was the man who robbed her, but was not 100 percent certain. Witrago told Detective Angela Nordyke at the police station that she was about 60 percent sure Hopkins was the man who robbed her. She explained at trial, that when she saw him in the squad car, she was sure it was him when she saw his eyes. Witrago testified she recognized his expression and the way he looked at her when he was arrested helped her to identify him as the robber.

Officers Brent Anderson and Edward Van Meter responded to a suspicious person call at the apartment complex about two months after Witrago was robbed. They talked to Hopkins because he matched the description of the suspicious person. Anderson noticed the butt of a handgun "hanging out of his pocket." The officers found a .22 long rifle caliber handgun and arrested Hopkins for possession of a firearm. As the officers were leaving with Hopkins, Witrago ran up and said she

2

thought Hopkins was the man who robbed her. While Van Meter was talking with Witrago, Hopkins kept looking back and asking Anderson what was happening. Hopkins appeared to be very nervous about Witrago talking to Van Meter.

After talking to Witrago, Nordyke interviewed Hopkins. The interview was recorded and portions were played to the jury. About an hour into the interview, Nordyke mentioned that Witrago had seen Hopkins in the squad car. Hopkins repeatedly denied any involvement in the robbery. As part of her interrogation strategy, Nordyke told Hopkins Witrago identified him because of the teardrop tattoo near his eye and had picked him out of a photo lineup. Nordyke also claimed to have security camera video footage from the apartment complex showing he was the robber. Nordyke told Hopkins he left a fired shell casing at the scene with his fingerprint on it, but she did not tell him the caliber of the shell casing.[1]

Hopkins indicated he knew the location of all the cameras at the apartment complex. Hopkins said Witrago must have been lying because the only cameras were around the pool and he did not rob anyone by the pool. Then he said, "If you can prove that I done shot a .380—not, not, not a .380, a .22, if I done shot a .22 anywhere in those apartments, you can lock me up." Nordyke asked Hopkins why he mentioned a .380? Hopkins said, "I meant a .22.... I got a .22.... I didn't get caught with no .380." Hopkins denied owning a .380, but when Nordyke again said police found his fingerprints on the .380 shell casing, Hopkins said he did not believe that his prints were on the casing because when he bought it, he "kept that gun like it was brand new" and never touched it.

---

[1]Nordyke testified there were no fingerprints found on the shell casing because it had been handled by members of Witrago's family before police arrive. There was also no security camera recording of the robbery and Witragodis not identify Hopkins from a photo lineup.

The interview lasted around two hours. Hopkins asked if he could go home several times. After he mentioned that the gun was a .380, he told Nordyke that his head was not right and he would probably say "yes" to anything.

Hopkins finally admitted to robbing Witrago. He admitted snatching her purse. He told Nordyke he bought the .380 on the street and threw the gun in the trash after the robbery because he knew he "messed up." Nordyke asked if he could describe Witrago, and he said, "I know that's her. I tell you the truth. I know that's her." He admitted he took the purse at the back of the apartments

Nordyke testified she did not tell Hopkins the caliber of the shell casing or that robbery occurred at the back of the apartments. Hopkins mentioned the .380 shell casing and Nordyke could tell Hopkins realized he "slipped up." Hopkins also knew where the robbery occurred even though Nordyke had not given him that information.

**Standard of Review**

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Acosta v. State, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011) (footnotes omitted).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Id. Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based

upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. Id. Our review of all of the evidence includes evidence that was properly and improperly admitted. Id. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. Id. Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. Id. We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. See Adames v. State, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

As applicable here, a person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A person commits robbery if the person, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Id. § 29.02(a). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. Id. § 31.03(a), (b)(1). A firearm is a deadly weapon. Id. § 1.07(a)(17)(A).

**Analysis**

**A. Identification**

Hopkins contends the evidence identifying him as the robber is insufficient. Specifically, he contends his confession was false, Witrago could not identify him "100 percent" as the robber, and there is no physical evidence linking him to the crime.

Hopkins contends his confession was false because he wanted to go home, his head was not right, and Nordyke lied to him. He does not contend his confession was involuntary, merely that it was false. His issue challenges the sufficiency of the evidence. In conducting our sufficiency review, we view the evidence in the light most favorable to the verdict and defer to the jury's determinations of credibility and weight of the evidence after drawing reasonable inferences from the evidence. See Adames, 353 S.W.3d at 860. Here, the jury heard the recording of the interview, saw Hopkins's demeanor during the interview, and how the confession unfolded. They also heard Nordyke's testimony regarding the interview. A reasonable fact finder could have believed Hopkins's incriminating statements in the interview were truthful.

Although Witrago stated she was only 60 percent certain of her identification when Hopkins was arrested, she also testified she immediately recognized him and his facial expression and shaking his head "no" indicated he recognized her. She testified she "recognized his eyes, not his face."

Like any other relevant fact, identity may be proved by direct or circumstantial evidence and eyewitness identification is not necessary. See Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); Smith v. State, 56 S.W.3d 739, 744 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd). The State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. Gardner v. State, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Witrago's identification testimony was only one part of the evidence the jury could reasonable consider in drawing its conclusion that Hopkins was the person who committed the offense. In addition to Witrago's testimony, there was Hopkins's confession, his knowledge of details only the robber would know, his knowledge of the location of security cameras at the apartments, his knowledge of where the robbery occurred, and his knowledge of the caliber

6

of the gun used during the robbery.

Hopkins points out that there was no physical evidence such as fingerprints or DNA connecting him to the robbery. The lack of physical or forensic evidence, however, does not render the evidence insufficient; the lack of such evidence is simply a factor for the jury to consider in weighing all the evidence. See Harmon v. State, 167 S.W.3d 610, 614 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd); Lee v. State, 176 S.W.3d 452, 458 (Tex.App.–Houston [1st Dist.] 2004), aff'd, 206 S.W.3d 620 (Tex. Crim. App. 2006). Further, in conducting our sufficiency review, we do not focus on "evidence that was not admitted at trial." Murray v. State, No. PD–1230–14, 2015 WL 1743419, at *4 (Tex. Crim. App. April 15, 2015). What is not in evidence is irrelevant to a determination of the sufficiency of the evidence. Chambers v. State, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

The record supports conflicting inferences, therefore we defer to the jury's resolution of those conflicts in favor of the prosecution. See Clayton, 235 S.W.3d at 778. The jury's inferences were reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. See id. Considering all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found Hopkins guilty of the offense beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Adames, 353 S.W.3d at 860. We overrule Hopkins's first issue.

## B. Charge Error

In his second issue, Hopkins argues the jury charge defined the offense under a different theory than alleged in the indictment and caused him egregious harm. The indictment alleged Hopkins committed aggravated robbery by threatening and placing Witrago in fear of imminent

7

bodily injury and death and used or exhibited a deadly weapon. The abstract definition of the offense in the jury charged defined robbery as:

> Our law provides that a person commits the offense of robbery if he, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of the property of another, intentionally or knowingly or recklessly causes bodily injury to another.

The application paragraph of the jury charge tracked the language of the indictment:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of March, 2013, in Dallas County, Texas, the defendant, ESSIE HOPKINS, then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place CONNIE WITRAGO, hereinafter called complainant, in fear of imminent bodily injury and death, and the defendant used and exhibited a deadly weapon, to-wit: a firearm, then you will find the defendant guilty of the offense of Aggravated Robbery, as charged in the indictment, and so say by your verdict.

8

Hopkins did not object to the charge at trial; accordingly, any error in the charge is reversible only if Hopkins was egregiously harmed such that he was denied a fair and impartial trial. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. Nava v. State, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); Almanza, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. Nava, 415 S.W.3d at 298 (citing Cosio v. State, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess the degree of harm in light of the entire jury charge, the state of the evidence as a whole, taking into account the contested issues and the weight of probative evidence, the arguments of counsel, and any other relevant information in the record. Id.

Our first inquiry is whether the charge contains an error. Almanza, 686 S.W.2d at 171. Reviewing the charge as a whole, we conclude the abstract definition of robbery was erroneous for this case. Hopkins was indicted for committing aggravated robbery by threatening or placing Witrago in fear of imminent bodily injury or death by using a deadly weapon. The definition of robbery as occurring when a person causes bodily injury to another while in the course of committing theft is not applicable to the offense charged in this case.

However, considering the record as a whole and the factors listed in Almanza, we conclude the error in the charge did not cause Hopkins egregious harm. The charge as a whole was not confusing. The application paragraph correctly tracked the indictment and focused the jury's attention on the essential elements of the offense. See Medina v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract

9

instruction is not egregious."). The application paragraph did not incorporate the erroneous definition of robbery. Although some defined terms were not referenced later in the charge, superfluous abstract definitions do not affect the jury's ability to fairly and accurately implement the commands of the application paragraph. See Plata v. State, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996), overruled on other grounds by Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997).

The error was not particularly harmful in light of the contested issues and the evidence. The contested issues in the case did not involve whether Hopkins caused bodily injury to another. The contested issues were the identity of Hopkins as the robber and the truthfulness of his confession. The evidence and closing arguments focused on these issues. Witrago testified she struggled with Hopkins when he grabbed her purse and fell to the ground, but there is no evidence in the record he caused her bodily injury. She testified about her fear when she saw the gun and thought Hopkins was going to kill her. In closing argument, the State argued about how terrified Witrago was because someone shot at her.

We conclude the erroneous definition of robbery did not affect the very basis of the case, deprive Hopkins of a valuable right, or vitally affect a defensive theory. See Nava, 415 S.W.3d at 298. Accordingly, the error did not result in egregious harm. We overrule Hopkins's second issue.

## C. Enhancement

In his third issue, Hopkins contends the evidence is insufficient to prove the enhancement allegations necessary to enhance the range of punishment to that for a habitual offender.

The indictment alleged that prior to commission of the current offense, Hopkins was finally convicted of the felony offense of aggravated assault on August 29, 2003. The State later filed a notice of intent to enhance punishment based on another prior conviction alleged to have occurred

before commission of this offense. The notice of enhancement alleged a prior final conviction for aggravated assault on "the 4th day of January." Hopkins asserts the evidence is insufficient to support the enhancement allegations because the state failed to prove the year when the conviction alleged in the notice of enhancement occurred.

At the punishment hearing, the State read the enhancement allegations in the indictment and the notice of enhancement:

> [P]rior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of aggravated assault with a deadly weapon in the 195th Judicial District Court in Dallas County, Texas in Cause No. F03–62924 on the 29th day of August 2003. And prior to the commission of the aforesaid offense by the said Essie D. Hopkins, to-wit: on the 4th day of January in the Criminal District court No. 3 of Dallas County, Texas, in Cause No. F09–55986 on the docket of said court, the said Essie D. Hopkins, under the name of Essie Hopkins, was duly and legally convicted in said last named court of a felony, to-wit: aggravated assault with a deadly weapon as charged in the indictment, upon indictment, and legally pending in said last named court, and of which said court had jurisdiction. And said conviction was a final conviction and was a conviction for an offense committed by him, the said Essie Hopkins, prior to the commission of the offense herein before charged against him as set forth in the first paragraph hereof.

11

Appellant's counsel then entered a plea of "true" to both allegations. Appellant confirmed he was the same person who was convicted and sent to the penitentiary on the prior convictions. After some discussion, the trial court clarified by asking appellant, "Are those two prior felony convictions true or not true?" Appellant responded, "True."

The indictment and the notice of enhancement alleged sequential final convictions. Appellant's plea of true to both enhancement allegations is sufficient evidence to support a finding on those allegations. See Wilson v. State, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984) ("[P]leas to enhancement allegations are different from pleas at the guilt-innocence phase of trial because a plea of 'true' does constitute evidence and sufficient proof to support the enhancement allegations.") (emphasis in original). By pleading true to the enhancement allegations and the sequence of the convictions, appellant relieved the State of the burden to prove the prior convictions. See Roberson, 420 S.W.3d at 838. Nothing in the record indicates this case is within the exception where the record affirmatively shows that the enhancement itself was improper. Id. We overrule Hopkins's third issue.

## Conclusion

We conclude the evidence was legally sufficient to support the conviction and the finding of the enhancement allegations. We also conclude any error in the jury charge did not result in egregious harm to Hopkins. We affirm the trial court's judgment.

/Craig Stoddart/

CRAIG STODDART

JUSTICE

12

Do Not Publish

Tex. R. App. P. 47.2 (b)