**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00211-CR**
_____

**JOHNNY CHEVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-19766**

**MEMORANDUM OPINION**

Appellant Johnny Chevis appeals his conviction and sentence for possession of marijuana. In three issues, Chevis contends that: (1) the evidence is insufficient to support his conviction; (2) the evidence is insufficient to support a finding that the enhancement paragraphs alleged in the indictment are true; and (3) he received ineffective assistance of counsel during the punishment phase of trial. For the reasons set forth below, we affirm Chevis's conviction, but reverse the portion of the judgment assessing punishment and remand for a new punishment hearing.

1

## I.       Background

Chevis was charged by indictment with the offense of possession of marijuana in an amount of five pounds or less but more than four ounces, a state jail felony. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3) (West 2010). The indictment contained enhancement paragraphs alleging that Chevis had prior convictions for three felony offenses. The enhancement allegations, if found true, raised the applicable punishment range to that for a second-degree felony. *See* Tex. Penal Code Ann. § 12.425(b) (West Supp. 2016). Chevis entered a plea of "not guilty" to the charged offense, and the case proceeded to a jury trial.[1]

The evidence at trial included testimony from a number of witnesses. A patrol sergeant with the Beaumont Police Department testified that while working as a narcotics detective with the Beaumont Police Department in 2013, he received information from a confidential informant that prompted him to initiate an investigation into a house located in Beaumont, Texas. As part of his investigation, the sergeant conducted surveillance of the house "on different days at different times" over a period of at least two weeks. During that time, he observed several

---

[1] Chevis was also indicted in cause number 14-19765 for the offense of unlawful possession of a firearm by a felon. Cause number 14-19765 was consolidated with this case for purposes of trial. Chevis was not convicted of unlawful possession of a firearm by a felon, and that charge is not at issue in this appeal.

people go into the house, stay for approximately five minutes or less, and then leave. He also observed "a lot of other people coming and staying at the house." He estimated that at any given time, there were ten or so people at the residence. According to the sergeant, none of the vehicles that he observed at the house were registered to that address. Further, although the house had electricity, the water to the house was not turned on. The sergeant testified that based on his investigation, it did not appear that anyone actually lived at the residence. Instead, the house appeared to be used as a place of "commerce" or "a shop" where people went to make purchases and then leave.

The sergeant testified that during his surveillance of the house, he observed Chevis at the residence on at least two different occasions. On one occasion, he observed Chevis entering the residence, and on another occasion, he saw Chevis sitting on the front porch of the house. Through his investigation, the sergeant ultimately formed a belief that Chevis was distributing illicit drugs from the house and that he possessed a number of firearms at that location. Based on this belief and the information gathered during his investigation, the sergeant applied for and obtained a warrant authorizing a search of the property.

On August 15, 2013, officers executed the search warrant on the house, to specifically search for Chevis and the presence of any controlled substances at the

residence. To execute the warrant, SWAT officers initially approached the house in an armored vehicle and used a PA system to instruct the individuals inside to exit the house. Shortly thereafter, nine people exited the house through the front door. Chevis also exited the house, but he came out through a side door, which was located on the west side of the house towards the back of the residence. All ten individuals who exited the house, including Chevis, were taken into custody. At trial, the State introduced a copy of a video recorded by a camera that was attached to the sergeant's police vest during the execution of the warrant. The video was admitted into evidence and played for the jury. The video corroborates the sergeant's testimony regarding the execution of the search warrant and the manner in which Chevis and the other individuals exited the residence. At trial, the sergeant identified the only man in the video who exited through the side door of the residence as Chevis.

The sergeant testified that after the house was secured, he and other narcotics detectives entered the house and searched the rooms inside. In the bathroom, which was located in the back of the house, the officers found a duffle bag on the countertop next to the sink. According to the sergeant, the duffle bag was partially unzipped, and inside the duffle bag, in plain view, there were four, clear bags containing a green, leafy substance that appeared to be marijuana. The

4

sergeant testified that he was able to identify the substance in the duffle bag as marijuana based on its appearance and odor. It was his opinion that the quantity of marijuana in the duffle bag was "far more" than necessary to make one marijuana cigarette. The officers also found a bag of what appeared to be synthetic marijuana on the bathroom countertop next to the duffle bag. The sergeant later weighed the marijuana contained in the duffle bag and determined that, in total, it weighed approximately three pounds, ten ounces. At trial, the sergeant identified State's Exhibit 5, which was later admitted through a different witness, as the marijuana that he found in the duffle bag in the bathroom of the residence on August 15, 2013.

The officers also found other drugs, drug paraphernalia, and weapons at the residence. In the kitchen, which was also located in the back of the house, the officers found a 9-millimeter handgun and a loaded magazine lying in plain view on the floor. On the kitchen counter next to the sink, the officers found a loaded revolver in plain view. In the sink area, there was a white, powdery substance, which appeared to be baking soda. The officers also found a glass cylinder and a whisk in the kitchen with white residue on them. The sergeant testified that these items were consistent with manufacturing crack cocaine. In the living room, which was located in the front of the house and into which the front door opened, the

officers found a piece of crack cocaine and a digital scale on top of a small table. A pistol was also found hidden behind one of the living room couches. Further, in a bedroom next to the living room, the officers found another small scale.

The sergeant testified that the bathroom where the marijuana was found was located in the back right corner of the house. He testified that although he could not know for certain whether Chevis ever went into the bathroom, the door through which Chevis exited the house when the search warrant was executed was located in the dining room, which was located towards the back of the house. The sergeant testified that Chevis was the only person who exited through this door at the time the search warrant was executed; every other person in the house exited through the front door.

After Chevis exited the residence, he was searched by the sergeant. Although the sergeant did not find any drugs or a key to the residence on Chevis, he discovered that Chevis was carrying $12,071 in cash on his person. The money was divided into $1,000 bundles, each of which was rolled up and wrapped with a rubber band. The sergeant testified that based on his experience, many individuals who are in the business of dealing, manufacturing, and delivering controlled substances and marijuana carry large sums of money on them, and in his opinion, possessing large amounts of cash is strongly indicative of illegal drug sales,

6

particularly when the money is divided and bundled together in the manner that Chevis's money was. Further, he testified that considering the fact that Chevis was found to have a large amount of cash on his person in a house that also contained cocaine, marijuana, and firearms, it was his opinion that the money found on Chevis was derived from illegal drug sales.

On cross-examination, the sergeant testified that the electricity to the house was registered in the name of someone other than Chevis, although he could not recall to whom it was registered. He testified, however, that "[i]t's a common thing with drug dealers" not to put utilities for a residence in their name when they are using the residence to deal drugs. The sergeant also testified that at the time the warrant was executed, there was a vehicle parked in the front yard of the residence and that vehicle was not registered to Chevis. He testified, however, that the vehicle "was consistent with [his] investigation for being the car driven to that house to bring drugs."

Two narcotics detectives also testified on behalf of the State. The first detective corroborated the sergeant's testimony that a pistol was found behind one of the couches in the living room of the residence. The second detective testified that after the house was secured, he entered the house and made a video recording of the interior of the residence and the items located inside the residence. He also

video recorded the individuals who had exited the house during the execution of the search warrant. At trial, the State introduced a copy of the video, which was admitted into evidence and played for the jury.[2] The video largely corroborates the sergeant's testimony at trial regarding the items discovered in the house. The video also shows that the bathroom where the marijuana was found is located in the back right corner of the house, and that the bathroom opens into a short hallway, at the end of which is the dining room containing the side door leading outside. The dining room containing the side door is located on the west, or left, side of the house.

A crime scene technician for the Beaumont Police Department testified that he processed the handguns that were found inside the residence for latent fingerprints, but he was not able to locate any useable fingerprints on the handguns. Additionally, a forensic scientist with the Jefferson County Regional Crime Lab testified that she performed testing on the green, leafy substance contained in one of the four plastic bags included in State's Exhibit 5. The tests she performed confirmed that the substance was marijuana. She testified that she also weighed the contents of the tested bag of marijuana and determined that, without the packaging, the contents of the bag weighed 14.22 ounces. She then weighed the

---

[2] The trial court admitted the video portion of State's Exhibit 6, but excluded the audio portion of it.

other three untested bags and determined that the weight of the untested bags (including the contents and the packaging) was 43.85 ounces. In total, the tested and untested marijuana weighed 3.6 pounds.

At the close of the State's case-in-chief, Chevis moved for an instructed verdict of not guilty, arguing that the evidence was insufficient to prove the elements of possession of marijuana as charged in the indictment. After hearing arguments from both sides, the trial court denied Chevis's motion. Chevis did not testify at trial or call any witnesses to testify on his behalf, and after closing arguments, the jury found Chevis guilty of possession of marijuana as charged in the indictment. At the punishment phase of the trial, Chevis pleaded "true" to each of the enhancement allegations, and after hearing additional evidence presented by the State, the jury assessed punishment at twenty years in prison and a $10,000 fine. Chevis timely filed this appeal.

## II.    Sufficiency of the Evidence to Support the Conviction

In his first issue, Chevis contends that the evidence is legally insufficient to support his conviction for possession of marijuana. Specifically, Chevis challenges the sufficiency of the evidence to support a finding that he knowingly possessed the seized marijuana.

9

## A.    Standard of Review

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318–19). The jury is the sole judge of the credibility and weight to be attached to the testimony of the witnesses. *Id*. In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the jury is permitted to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved those conflicts in favor of the verdict and therefore defer to that determination. *Id*.

In reviewing the sufficiency of the evidence, we consider all of the evidence in the record, regardless of whether it was properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are

10

equally probative of an actor's guilt, and "'circumstantial evidence alone can be sufficient to establish guilt.'" *Temple*, 390 S.W.3d at 359 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a circumstantial evidence case, each fact need not point directly and independently to the guilt of the defendant so long as the combined and cumulative force of all the incriminating circumstances warrants the conclusion that the defendant is guilty. *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *Hooper*, 214 S.W.3d at 13. "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

**B. Applicable Law**

A person commits a state jail felony offense if the person intentionally or knowingly possesses a usable quantity of marijuana in an amount of five pounds or less but more than four ounces. Tex. Health & Safety Code Ann. § 481.121(a), (b)(3). "Possession" is statutorily defined as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2016); Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2016). To prove unlawful possession of a controlled substance, the State must show that: (1) the defendant exercised control, management, or care over the substance; and (2) the defendant

11

knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). Although the elements of possession may be proven through direct or circumstantial evidence, the evidence must establish "'that the accused's connection with the drug was more than just fortuitous.'" *Poindexter*, 153 S.W.3d at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

"Possession need not be exclusive." *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). "'[W]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). A defendant's mere presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). This requirement protects innocent bystanders from conviction based solely on their proximity to someone else's contraband. *Poindexter*, 153 S.W.3d at 406. However, presence or proximity, combined with other direct or circumstantial

evidence (e.g., "links"), may be sufficient to establish the elements of possession beyond a reasonable doubt. *Evans*, 202 S.W.3d at 162.

"An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Links that may establish knowing possession include: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of drugs when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. Additionally, a large quantity of contraband may be a factor affirmatively linking the accused to the contraband. *Wright v. State*, 401

S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The Court of Criminal Appeals has cautioned that these factors are "not a litmus test[,]" but are "simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.'" *Evans*, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id*. at 162.

## C.    Analysis

In the present case, the evidence establishes several factors that link Chevis to the marijuana found at the residence. First, the evidence shows that Chevis was present at the residence at the time the search warrant was executed. Second, during the officers' search of the residence, the officers found marijuana in plain view in the only bathroom in the house. Third, the bathroom in which the marijuana was found was located in the back right corner of the house. Although no eyewitness testified to seeing Chevis in the bathroom, the evidence shows that when the warrant was executed, Chevis was the only person who exited the house through the side door, which was located near the back of the residence. All of the other occupants of the house exited through the front door. The video recorded by the narcotics detective depicting the interior of the residence shows that the bathroom where the marijuana was found opened into a short hallway that led

14

directly into the dining room containing the side door through which Chevis exited. While this evidence does not by itself establish that Chevis was in the bathroom, it does give rise to a reasonable inference that Chevis was in or near the back of the house immediately before the search warrant was executed and that he had access to the marijuana in the bathroom.

Fourth, the marijuana found in the bathroom constituted a large quantity of contraband. The evidence shows that, in total, the marijuana seized from the duffle bag in the bathroom weighed 3.6 pounds. The sergeant testified that this was "far more" marijuana than was necessary to make one marijuana cigarette. Fifth, other contraband, including crack cocaine, and drug paraphernalia, including two scales, were found at the residence. Two loaded firearms were also found in plain view in the kitchen, and a third firearm was found hidden behind a couch in the living room. Sixth, Chevis was found with over $12,000 on his person when he was taken into custody. There was no evidence that any other occupant of the house possessed a large sum of money at the time the warrant was executed. The "[p]resence of a large amount of cash can supply an inference that an individual is trafficking and, therefore, in possession of contraband." *Coleman v. State*, 113 S.W.3d 496, 501 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 145 S.W.3d 649 (Tex. Crim. App. 2004). Moreover, the money in Chevis's possession was divided

into $1,000 bundles, each of which was rolled and wrapped with a rubber band. The sergeant testified that, based on his experience, carrying a large amount of cash that is bundled in such a manner is "strongly indicative of illegal drug sales[.]" Further, he testified that considering the fact that Chevis was found to have over $12,000 on his person in a house that also contained cocaine, marijuana, and firearms, it was his opinion that the money found on Chevis was derived from illegal drug sales. *See Blackman*, 350 S.W.3d at 596 (concluding that a jury may reasonably rely on the opinion of an experienced narcotics investigator that the defendant acted like a narcotics trafficker).

Seventh, prior to the execution of the search warrant, the police observed suspicious activity at the residence consistent with the distribution of illicit drugs over a period of approximately two weeks. Specifically, the sergeant testified that during the period that he conducted surveillance of the residence, he observed "several" people go to the house, stay for approximately five minutes or less, and then leave. He testified that based on his investigation, it did not appear that anyone actually lived at the residence and that it instead seemed that the house was being used as "a shop" where people went to make purchases and then leave. Further, the sergeant observed Chevis at the residence during the two weeks that the suspicious activity was occurring.

16

Based on the totality of the evidence, and viewing the evidence in the light most favorable to the verdict, a rational jury could have found sufficient affirmative links to reasonably infer that Chevis had knowledge of the marijuana in the bathroom based on the fact that Chevis was present when the search warrant was executed, the large quantity of marijuana that was found, the fact that the marijuana was in plain view and was located in the only bathroom in the house, and Chevis's proximity and ready access to the marijuana in the house. Further, a rational jury could have reasonably inferred that Chevis was engaged in the act of selling—and, thus, was exercising "care, custody, or control" over—the marijuana based on the quantity of marijuana found, the presence of scales and multiple weapons in the house, the $12,000 found on Chevis's person arranged in a manner indicative of illegal drug sales, the fact that no other occupant of the house was shown to be carrying a large amount of cash, and the officer's testimony that he had observed Chevis and activity consistent with illegal drug sales at the house prior to the execution of the warrant.

Chevis argues that the evidence is nevertheless insufficient to show that he knowingly possessed the marijuana in the bathroom because there are a number of other "factors" that did not link him to the marijuana. However, "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed

17

against the affirmative links present." *Henry v. State*, 409 S.W.3d 37, 43 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *Wiley*, 388 S.W.3d at 814). Moreover, "[i]t is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Evans*, 202 S.W.3d at 166.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that Chevis intentionally or knowingly possessed the marijuana found in the bathroom of the residence. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360. We overrule Chevis's first issue.

## III. Sufficiency of the Evidence to Support the Enhancement Allegations

In his second issue, Chevis argues that there is insufficient evidence to support a finding that the enhancement paragraphs alleged in the indictment are true. Specifically, Chevis contends that although he pleaded "true" to the enhancement paragraphs in the indictment, the evidence introduced by the State at the punishment phase of trial affirmatively shows that the convictions alleged in the first two enhancement paragraphs did not become final until after the commission of the offense that forms the basis of the conviction alleged in the third enhancement paragraph. Accordingly, he contends that the evidence is insufficient to enhance the punishment range for the offense to that of a second-

18

degree felony and that we should therefore reverse the portion of the trial court's judgment imposing punishment and remand the case to the trial court for a new punishment hearing.

## A.     Facts

In the present case, the indictment contained three enhancement paragraphs, which alleged as follows:

> AND THE GRAND JURORS AFORESAID, upon their oaths aforesaid, do further present in and to said Court, at said term, that before the commission of the primary offense, the Defendant was finally convicted of the felony of POSSESSION OF A CONTROLLED SUBSTANCE– THIRD DEGREE FELONY and was finally convicted of such felony on July 6, 2009, in Cause No. 08-05201, in the CRIMINAL District Court of JEFFERSON County, Texas,
>
> AND THE GRAND JURORS AFORESAID, upon their oaths aforesaid, do further present in and to said Court, at said term, that before the commission of the primary offense, the Defendant was finally convicted of the felony of DELIVERY OF A CONTROLLED SUBSTANCE– FIRST DEGREE FELONY and was finally convicted of such felony on JULY 6, 2009, in Cause No. 09-06248, in the CRIMINAL District Court of JEFFERSON County, Texas,
>
> AND THE GRAND JURORS AFORESAID, upon their oaths aforesaid, do further present in and to said Court, at said term, that before the commission of the primary offense, and after the conviction in Cause No. 08-05201 became final, and after the conviction in Cause No. 09-06248 became final, the Defendant committed the felony of DELIVERY OF A CONTROLLED SUBSTANCE– SECOND DEGREE FELONY and was finally convicted of such felony on FEBRUARY 14, 2011, in Cause No. 10-09328, in the [252ND] District Court of JEFFERSON County, Texas[.]

At the punishment phase of trial, Chevis pleaded "true" to all three enhancement allegations in the indictment.

Following the entry of Chevis's pleas, the State introduced State's Exhibits 9, 10, and 11, which contained documents evidencing the three prior convictions alleged in the enhancement paragraphs, and these exhibits were admitted into evidence. Specifically, State's Exhibit 9 contains a certified copy of the judgment of conviction in cause number 08-05201, which shows that Chevis was convicted of the offense of possession of a controlled substance, a third-degree felony, and sentenced to ten years in prison on July 6, 2009. However, the judgment also states that Chevis's sentence was suspended and that he was placed on community supervision for a period of ten years. The judgment further states that the possession offense that forms the basis of the conviction in cause number 08-05201 was committed on November 24, 2008. State's Exhibit 9 also contains certified copies of: (1) a motion to revoke community supervision filed by the State in cause number 08-05201; (2) a judgment revoking Chevis's community supervision and imposing a ten year sentence in cause number 08-05201 on February 22, 2011; and (3) the criminal docket sheet for cause number 08-05201, which contains entries stating: "2/22/11 Notice of Appeal[,]" "5/25/11 OPINION

ENTERED. APPEAL DISMISSED[,]" and "7/20/11 MANDATE ISSUED. APPEAL DISMISSED."

State Exhibit 10 contained a certified copy of the judgment of conviction in cause number 09-06248, which shows that Chevis was convicted of the offense of delivery of a controlled substance, a first-degree felony, and sentenced to ten years in prison on July 6, 2009. However, the judgment also states that Chevis's sentence was suspended and that he was placed on community supervision for a period of ten years. The judgment states that the delivery offense that forms the basis of the conviction in cause number 09-06248 was committed on March 4, 2009. State's Exhibit 10 does not contain a copy of a motion to revoke community supervision or a copy of a judgment revoking Chevis's community supervision in cause number 09-06248. However, State's Exhibit 10 contains a certified copy of the criminal docket sheet for cause number 09-06248, which contains entries stating: "2/22/11 Notice of Appeal[,]" "5/25/11 OPINION ENTERED. APPEAL DISMISSED[,]" and "7/20/11 MANDATE ISSUED. APPEAL DISMISSED."

State's Exhibit 11 contains a certified copy of the judgment of conviction in cause number 10-09328, which shows that Chevis was convicted of the offense of delivery of a controlled substance, a second-degree felony, and sentenced to five years in prison on March 12, 2011. The judgment does not place Chevis on

community supervision, but instead orders the five-year sentence imposed to be executed. The judgment states that the delivery offense that forms the basis of the conviction in cause number 10-09328 was committed on January 5, 2010. State's Exhibit 11 also contains a certified copy of the criminal docket sheet for cause number 10-09328, but the docket sheet does not contain any entries following Chevis's conviction.

The trial court's charge to the jury instructed the jury that Chevis pleaded "true" to the three enhancement paragraphs alleged in the indictment. Further, the jury charge instructed the jury that Chevis qualified under law for enhanced punishment and that the jury was to assess Chevis's punishment in accordance with the punishment range for a second-degree felony. The jury's verdict assessed a punishment of twenty years in prison and a fine of $10,000.

## B.    Standard of Review

In reviewing the sufficiency of the evidence to support a finding that an enhancement allegation is true, we consider all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have found the essential elements of the enhancement beyond a reasonable doubt. *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016). The sufficiency of the evidence to support an enhancement should be measured by the hypothetically

22

correct jury charge for the enhancement, as defined by statute. *See Roberson v. State*, 420 S.W.3d 832, 841 (Tex. Crim. App. 2013); *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000).

## C.     Applicable Law

The jury found Chevis guilty of the state jail felony offense of possession of marijuana. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3). A state jail felony offense carries a punishment range of confinement in a state jail for a term of not more than two years and not less than 180 days and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.35(a), (b). However, the range of punishment may be enhanced to the range applicable to a second-degree felony if it is shown that: (1) the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under section 12.35(a); and (2) the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final. *Id*. § 12.425(b). The punishment range for a second-degree felony is imprisonment for a term of not more than twenty years and not less than two years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.33 (West 2011).

For punishment to be enhanced under section 12.425(b), the chronological sequence of events must be proved as follows: (1) the first conviction becomes

23

final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; and (4) the offense for which the defendant presently stands accused is committed. *See* Tex. Penal Code Ann. § 12.425(b); *see also Jordan v. State*, 256 S.W.3d 286, 290–91 (Tex. Crim. App. 2008) (explaining required sequencing of events under nearly identical language in Penal Code section 12.42(d)). "'[A] conviction from which an appeal has been taken is not considered final until the appellate court affirms the conviction and issues its mandate.'" *Jordan v. State*, 36 S.W.3d 871, 875 (Tex. Crim. App. 2001) (quoting *Johnson v. State*, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990)). Further, a probated sentence is not final for purposes of enhancement until that probation has been revoked and any appeal of the revocation has been resolved. *Donaldson v. State*, 476 S.W.3d 433, 438 (Tex. Crim. App. 2015); *Jordan*, 36 S.W.3d at 875. When there is no evidence to show that the offenses were committed and the convictions became final in the proper sequence, the defendant's sentence may not be enhanced under the State's habitual offender statutes. *Jordan*, 256 S.W.3d at 291.

"The State has the burden of proof to show that any prior conviction used to enhance a sentence [is] final under the law and that the defendant [is] the person previously convicted of that offense." *Donaldson*, 476 S.W.3d at 439; *Wilson v.*

24

*State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984). Further, when the State seeks to enhance a defendant's punishment under a "habitual felony offenders" statute, such as section 12.425(b), the State carries the burden of proving beyond a reasonable doubt that the defendant's second previous felony conviction was committed after the defendant's first previous felony conviction became final. *See* Tex. Penal Code Ann. § 12.425(b); *Donaldson*, 476 S.W.3d at 439; *see also Jordan*, 256 S.W.3d at 291.

Generally, when a defendant pleads "true" to an enhancement paragraph, it relieves the State of its evidentiary burden to prove the enhancement allegations, and the defendant cannot complain on appeal that the evidence is insufficient to support the enhancements. *Hopkins v. State*, 487 S.W.3d 583, 586 (Tex. Crim. App. 2016); *Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006). However, there is a narrow exception to this rule. If the record "affirmatively reflects" that the enhancement itself was improper, then the conviction cannot be used to enhance punishment, even though the defendant pled "true" to the enhancement paragraph. *Rich*, 194 S.W.3d at 513–14; *Mikel v. State*, 167 S.W.3d 556, 559–60 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (concluding that where the record affirmatively showed that the necessary sequence of convictions was not proved, the evidence was legally insufficient to support the enhancement

25

allegations despite the defendant's plea of "true" and the defendant was not precluded on appeal from challenging the sufficiency of the evidence to support the enhancement allegations).

**D.     Analysis**

Chevis argues that the evidence is insufficient to show that his three prior convictions meet the sequencing requirements for enhancement under section 12.425(b). Specifically, he contends that, despite his pleas of "true" to the enhancement allegations at trial, the record affirmatively reflects that his convictions in cause numbers 08-05201 and 09-06248 did not become final before the commission of the offense that led to his conviction in cause number 10-09328. The State concedes error, acknowledging that Chevis's prior convictions "are not properly sequenced for purposes of enhancement" under section 12.425(b).

In the present case, the enhancement paragraphs in the indictment alleged the existence of three prior convictions: (1) a conviction for possession of a controlled substance in cause number 08-05201; (2) a conviction for delivery of a controlled substance in cause number 09-06248; and (3) a conviction for delivery of a controlled substance in cause number 10-09328. Further, the third enhancement paragraph alleged that the delivery offense that forms the basis of the conviction in cause number 10-09328 was committed after the convictions in cause

26

numbers 08-05201 and 09-06248 became final. Although the third enhancement paragraph, if true, would satisfy the sequencing requirements of section 12.425(b), we agree with the parties that the record affirmatively demonstrates that Chevis's prior convictions did not actually occur in the required sequence.

First, the judgment of conviction in cause number 10-09328, which was admitted into evidence at the punishment hearing, shows that the delivery offense that forms the basis of the conviction in that case was committed on January 5, 2010. The judgment of conviction in cause number 08-05201, which was also admitted into evidence at the punishment hearing, shows that Chevis was convicted of the offense of possession of a controlled substance and sentenced to ten years in prison on July 6, 2009. However, the judgment in cause number 08-05201 also shows that Chevis's sentence was suspended and that he was placed on probation for a period of ten years. A separate document, entitled "Judgment Revoking Community Supervision," shows that Chevis's probation in cause number 08-05201 was later revoked on February 22, 2011. Therefore, Chevis's conviction in cause number 08-05201 did not become final until February 22, 2011, at the earliest. *See Donaldson*, 476 S.W.3d at 438; *Jordan*, 36 S.W.3d at 875. As such, the record affirmatively demonstrates that the offense that forms the basis

27

of the conviction in cause number 10-09328 was not committed "after the conviction in Cause No. 08-05201 became final[.]"

Second, the judgment of conviction in cause number 09-06248 shows that Chevis was convicted of the offense of delivery of a controlled substance and placed on probation for a period of ten years on July 6, 2009. Because the sentence was probated, the July 6, 2009 judgment in cause number 09-06248 does not reflect a final conviction. *See Donaldson*, 476 S.W.3d at 438; *Jordan*, 36 S.W.3d at 875. The record does not contain an order revoking Chevis's probation in cause number 09-06248. The record, however, does contain the criminal docket sheet for cause number 09-06248. The docket sheet contains the following entry: "2/14/11 Hearing held on States MTRP. Defendant plead true to count one. Court found count one to be true. Count 2 abandoned[.] Defendant duly sentenced to 10 yr TDCJ[,] this sentence shall run consecutive upon completion of cause # 08-05201[.]" The docket sheet also contains entries stating: "2/22/11 Notice of Appeal[;]" "5/25/11 OPINION ENTERED. APPEAL DISMISSED[;]" and "7/20/11 MANDATE ISSUED. APPEAL DISMISSED[.]" Neither party has specifically addressed whether a docket entry, by itself, constitutes evidence sufficient to prove the finality of a prior conviction for purposes of punishment

enhancement.[3] *See Kerr v. State*, 83 S.W.3d 832, 834 (Tex. App.—Texarkana 2002, no pet.) (noting that docket sheet entries do not become part of the record in the cases that they describe); *State v. Shaw*, 4 S.W.3d 875, 878 (Tex. App.—Dallas 1999, no pet.) (noting that docket sheet entries "are inherently unreliable, lacking the formality of orders and judgments" and are merely "a memorandum made for the convenience of the trial court and clerk"); *see also Belle v. State*, No. 14-05-01111-CR, 2006 WL 2074662, *2 (Tex. App.—Houston [14th Dist.] July 27, 2006, no pet.) (mem. op., not designated for publication) (noting that although it may supply facts in certain situations, a docket entry may not be used to contradict or prevail over a final judicial order and concluding that the docket entry in question did not establish that the defendant's prior conviction was not final).

---

[3] A review of our own records indicates that Chevis did, in fact, file a notice of appeal in cause numbers 08-05201 and 09-06248, that this Court dismissed the appeals in both cases by an opinion dated May 25, 2011, and that we issued a mandate in both cases on July 20, 2011. *See Chevis v. State*, Nos. 09-11-00077-CR, 09-11-00078-CR, 2011 WL 2135235 (Tex. App.—Beaumont May 25, 2011, no pet.) (mem. op., not designated for publication). However, an appellate court may not "look to records in other cases to supply factual deficiency in the case before it." *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987); *see also Fletcher v. State*, 214 S.W.3d 5, 8–9 (Tex. Crim. App. 2007) (concluding that court of appeals erred by taking judicial notice of mandate issued in a different case for the purpose of finding that the defendant's prior conviction was final). Further, the State has not requested that we take judicial notice of our records in the appeals of cause numbers 08-05201 and 09-06248. We therefore decline to take judicial notice of the notices of appeal filed or the opinion and mandates issued in the appeals of cause numbers 08-05201 and 09-06248 for the purpose of finding that Chevis's convictions in those cases were final.

However, we need not answer that question here because it would not change the outcome of our analysis.

To the extent the docket entries in cause number 09-06248 constitute sufficient evidence to prove that the events they purport to describe actually occurred, the record affirmatively demonstrates that Chevis's conviction in cause number 09-06248 became final, at the earliest, on February 14, 2011, when his probation was revoked. *See Donaldson*, 476 S.W.3d at 438; *Jordan*, 36 S.W.3d at 875. However, as already noted, the judgment of conviction in cause number 10-09328 shows that the delivery offense that forms the basis of the conviction in that case was committed on January 5, 2010. Under these facts, the record affirmatively demonstrates that the offense in cause number 10-09328 did not occur "after the conviction in Cause No. 09-06248 became final[.]" On the other hand, if the docket entries in cause number 09-06248 do not constitute sufficient evidence of the events that they purport to describe, then the record shows that Chevis was convicted of the delivery offense in cause number 09-06248 and placed on probation for a period of ten years on July 6, 2009, but it does not show that the conviction in cause number 09-06248 ever became final. Under these circumstances, we conclude that the record affirmatively reflects that the enhancement of Chevis's sentence under section 12.425(b) was improper because

30

the prior offenses and convictions alleged in the indictment did not occur in the required sequence.[4] *See Williams v. State*, 309 S.W.3d 124, 131 (Tex. App.—Texarkana 2010, pet. ref'd) (concluding that where the record affirmatively showed that the prior conviction on which the enhancement was based had been appealed, but there was no evidence to show that the conviction had become final, the record affirmatively demonstrated that the enhancement was improper, despite the defendant's plea of "true" to the enhancement allegations). Therefore, the evidence was not legally sufficient to sustain the enhancement under section 12.425(b), despite Chevis's pleas of "true" to the enhancement allegations. *See Rich*, 194 S.W.3d at 513–14; *Mikel*, 167 S.W.3d at 559–60.

The Court of Criminal Appeals has held that a harm analysis is inappropriate and should not be undertaken when insufficient evidence exists to prove an enhancement allegation. *See Jordan*, 256 S.W.3d at 292–93 (concluding that a harm analysis was inappropriate where the evidence was insufficient to prove the

---

[4] Further, we note that even if the alleged prior convictions are considered in a different sequence than that alleged in the indictment, they do not satisfy the sequencing requirement under section 12.425(b). *Cf. Roberson v. State*, 420 S.W.3d 832, 840 (Tex. Crim. App. 2013) (concluding that the evidence was sufficient to support enhancement of the defendant's punishment to that of a habitual offender, even though the indictment's enhancement paragraphs were alleged in the incorrect sequence on the face of the indictment, where the record reflected that the sequence of the alleged prior convictions did indeed occur in the required order).

chronological sequence of punishment enhancement allegations as required under habitual felony offender statute); *see also Mikel*, 167 S.W.3d at 560 (concluding that a harm analysis is inappropriate when the evidence is insufficient to support findings of true to habitual offender enhancements). This is because the State's failure to meet its evidentiary burden with respect to habitual offender enhancement "can never be deemed harmless." *Jordan*, 256 S.W.3d at 292, 293. Accordingly, we sustain Chevis's second issue without conducting a harm analysis. Because the error affects only the validity of the sentence, the proper remedy is to remand the case for reassessment of punishment.[5] *See* Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 2016); *Jordan*, 256 S.W.3d at 293; *Williams*, 309 S.W.3d at 131.

## IV.    Conclusion

We affirm the trial court's judgment as to guilt, but reverse the portion of the judgment assessing punishment and remand for a new punishment hearing.

---

[5] Because of our disposition of Chevis's second issue, we need not address his third issue, which complains of ineffective assistance of counsel during the punishment phase of trial. *See* Tex. R. App. P. 47.1.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.


_____
CHARLES KREGER
Justice

Submitted on November 30, 2015
Opinion Delivered November 30, 2016
Do not publish

Before Kreger, Horton, and Johnson, JJ.