**Affirmed and Opinion Filed January 2, 2018**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00638-CR

### MARTIN GUTIERREZ JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1512273-J**

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Bridges

Martin Gutierrez appeals his murder conviction. The jury convicted appellant and sentenced him to sixty years' confinement and a $10,000 fine. In three issues, appellant argues the trial court (1) erred in refusing to grant a mistrial, (2) violated its duty to correctly instruct the jury on punishment, and (3) violated appellant's right to due process by failing to explain in the jury charge that good conduct time was inapplicable. We affirm the trial court's judgment.

In June 2015, appellant was indicted on a murder charge. The indictment alleged appellant intentionally and knowingly caused the death of Cesar Martinez-Zamarripa by striking him with appellant's hand and foot and inflicting neck compression with appellant's foot. Prior to trial, the State filed a notice of enhancement expressing its intention to enhance punishment,

"as the defendant is a habitual offender having twice been finally convicted of consecutive felony offenses, other than state jail felonies." The notice listed the following offenses:

On or about October 5, 2006, the defendant was convicted of Assault Bodily Injury – Family Member in the 179th District Court of Harris County, Texas, in cause number 1051183, and sentenced to 2 years confinement in the Institutional Division of the Texas Department of Criminal Justice.

Prior to the defendant's conviction in cause number 1051183, on or about January 12, 2000, the defendant was convicted of Robbery in the 337th District Court of Harris County, Texas, in cause number 833072, and sentenced to 2 years confinement in the Institutional Division of the Texas Department of Criminal Justice.

At trial, Carrollton police officer Bryan Ryter testified he was "dispatched to a fight call at a hotel" in Carrollton on May 31, 2015. The call indicated two people were fighting near room 206, and one person was "not moving." When they arrived, Ryter and his partner, Officer Morris, encountered the manager who "was just pointing up towards the upstairs where Room 206 was." Upstairs, Ryter saw "blood spots" on the landing in front of Room 206 and followed the spots down to Room 210. The door to Room 210 was ajar, and the door swung open when Ryter knocked on it. Inside the room, at the foot of one of the two beds in the room, Ryter saw a motionless body lying face up with "blood all over the face and neck area." Appellant was sitting on the foot of the bed over the body, and appellant's foot was on the neck of the body. When the door swung open, appellant turned toward Ryter, and Ryter saw appellant had a knife in his right hand. Appellant repeatedly said "I killed him, I killed him" in an "angry way." Ryter and Morris both drew their weapons and ordered appellant to drop the knife. Appellant looked like he "was surprised to see" Ryter and Morris, and "it took a bunch of yelling before [appellant] dropped the knife." After dropping the knife, appellant "eventually complied" with the officers' direction to walk to the door, and Ryter put on latex gloves before handcuffing appellant because appellant was covered in blood. After he was handcuffed, appellant "started a constant barrage of saying, 'I killed him. I stomped him. He messed with the wrong guy. He

–2–

didn't know who he was messing with,' that kind of thing." Appellant "continued saying those statements over and over again" as he was led downstairs, placed in the prisoner compartment of a patrol car, and held in the car for approximately thirty minutes before Ryter took him to jail. A video camera inside the patrol car recorded appellant's actions and statements inside the car, and the video was played without objection.

Juan Esparza testified he worked "in construction" with appellant, "Pablo," and Martinez-Zamarripa, and the men all stayed at a motel on I-35 in Carrollton. On May 31, 2015, appellant drove the men in Martinez-Zamarripa's car to a club where they drank beer and tequila. When the men attempted to leave the club, the valet could not find the keys to Martinez-Zamarripa's car. Martinez-Zamarripa blamed appellant for the loss, and Martinez-Zamarripa and appellant "argued and they fought." The fighting and arguing continued between Martinez-Zamarripa and appellant outside the club and in a taxicab that took the men back to the motel. At the motel, Martinez-Zamarripa came upstairs where appellant, Pablo, and Esparza had rooms and "took a swing" at appellant. "[E]verybody was really drunk," and Esparza was "pretty intoxicated," so he went into his room and went to bed.

Stephen Hastings, a medical examiner at the Dallas County Medical Examiner's office, testified he conducted an autopsy on Martinez-Zamarripa and concluded he died of homicidal violence, including blunt force injuries and neck compression. Hastings determined Martinez-Zamarripa's blood alcohol level was .212, "between two and three times" the level allowable for someone who would be operating an automobile.

The jury found appellant guilty of murdering Martinez-Zamarripa. At punishment, the prosecutor arraigned appellant on prior convictions the State intended to use for enhancement purposes: a 2006 conviction of assault, bodily injury, family member and a 2000 robbery conviction. Through his attorney, appellant pled true to these allegations.

During argument, the prosecutor made the following statements:

[PROSECUTOR]: Don't believe the type of person he's trying to paint himself as right now. He's staring at 25 to life. He's staring at a jury. Of course he's gonna tell you things that are gonna make you feel remorseful for him. Don't believe that.

Don't believe the intoxication is the only reason why he committed this offense. Don't believe that. You don't have to believe it. Don't believe what the defense attorney is saying. He is paid. He has been appointed in this case, actually.

[DEFENSE COUNSEL]: Judge, I'm gonna object to that.

THE COURT: Objection sustained.

[DEFENSE COUNSEL]: Move for – ask the jury to be instructed to disregard.

THE COURT: Jury is to disregard that.

[DEFENSE COUNSEL]: Move for a mistrial.

THE COURT: Your request for a mistrial is denied.

[PROSECUTOR]: This attorney is doing his job. He's defending his client. Painting the best picture that he can; the best picture that he can, and it's not even a good picture. It's a picture full of excuses of why you should go easy on him. Don't do that. Don't believe him. Don't believe the excuses that the expert gave you. I'd maybe believe the excuses that the expert gave you if at the end of this video he was like, Oh, my God. If when he was caught with a knife he didn't say, Oh, my God. I didn't know what I did, and snapped out of his trance. But this is a guy who stomped on a guy for 15 minutes and every time somebody came around, Ssshhhhh. Don't tell anybody. You didn't see anything. Sssshhhhh. He silenced someone. He silenced a bunch of people that night. They came – you saw them. They came. They didn't even want to be here. You know why? They're afraid of him, as you should be, and as the community should be.

The court's charge at punishment addressed the two convictions to be used for enhancement

purposes as follows:

In Paragraph Two of the Notice of Enhancement, it is alleged that prior to the commission of the aforesaid offense set forth in the first paragraph above, the said defendant was convicted of a felony offense of Assault Bodily Injury – Family Member, on or about the 5th day of October, 2006, in the 179th District Court of Harris County, Texas, in Cause Number 1051183, under the name **MARTIN GUTIERREZ** and said conviction was a final conviction.

In Paragraph Three of the Notice of Enhancement, it is alleged that prior to the commission of each of the aforesaid offenses set forth in the first paragraph

–4–

above, the said defendant was convicted of a felony offense of Robbery, on or about the 12th day of January, 2000, in the 337th District Court of Harris County, Texas, in Cause Number 833072, under the name **MARTIN GUTIERREZ** and said conviction was a final conviction.

The jury assessed punishment at sixty years' confinement and a $10,000 fine. This appeal followed.

In his first point of error, appellant argues the trial court erred in refusing to grant a mistrial. Specifically, appellant argues the State's argument that defense counsel was "paid" improperly inflamed the minds of the jury during jury argument by striking at appellant over the shoulders of counsel.

A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. *Id.* Of course, the harm analysis is conducted in light of the trial court's curative instruction. *Id.* Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Id.*

The factors set forth in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), should be used to evaluate whether the trial court abused its discretion in denying a mistrial for improper argument, at least in cases like this one, in which constitutional rights are not implicated. *Id.* An "appropriately tailored version" of the *Mosley* factors applies in the non-capital trial punishment phase context. *Id.* We balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Id.*

In *Mosley*, the court addressed a situation in which the trial court overruled appellant's objection to the prosecutor's argument that there was "only one route to the truth," and defense

counsel had attempted to "get [the jury] off the main road" and "divert" the jury. *Mosley*, 983 S.W.2d at 258. The court noted that, although it is impossible to articulate a precise rule regarding these kinds of argument, it is fair to say that a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character. *Id.* at 259. The court concluded the argument referred to counsel personally and, although not saying so explicitly, it suggested that counsel wanted to divert the jury from the truth. *Id.* Under those circumstances, the court "assume[d] the argument was inappropriate." *Id.* However, the court concluded the prosecutor's comments were "mildly inappropriate" because they did not directly accuse the defense attorneys of lying, and the comments did not suggest that any evidence was manufactured. *Id.*

In context, the prosecutor's comment in this case appears to be part of an argument that, despite defense counsel's attempt to paint "the best picture" of appellant, the picture was still "not even a good picture." The State concedes that the prosecutor's argument, "Don't believe what the defense attorney is saying. He is paid," was improper. Nevertheless, the prosecutor's argument did not directly accuse the defense attorney of lying, and the argument did not suggest that any evidence was manufactured. *See id.*

As for curative measures, the trial court sustained appellant's objection and instructed the jury to disregard the prosecutor's argument. In most instances, an instruction to disregard impermissible remarks by a prosecutor will cure the error. *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). We presume the jury complied with an instruction to disregard from the trial court. *Id.* at 116. Impermissible jury argument will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial

proceeding. *Id.* at 115. Here, the prosecutor's argument was not so flagrant that the instruction to disregard was ineffective. *See id.* at 116.

Finally, it appears likely the same punishment would have been assessed without the prosecutor's argument. The evidence showed appellant went out drinking with Martinez-Zamarripa, and the two fought and argued over the loss of Martinez-Zamarripa's car keys. Police found appellant with his foot on the neck of Martinez-Zamarripa's dead body. Appellant repeatedly said "I killed him, I killed him" in an "angry way." Appellant continued to say he "killed him" and "stomped him" as he was handcuffed and detained in a police car. Video of appellant's actions and statements inside the car was played without objection. In addition, as discussed below, appellant had two sequential felony convictions. Balancing the *Mosley* factors, we conclude the trial court did not abuse its discretion in denying a mistrial for improper argument. *See Mosley*, 983 S.W.2d at 259. We overrule appellant's first point of error.

In his second point of error, appellant argues the trial court violated its duty to correctly instruct the jury on punishment by enlarging the enhancement allegations to state that appellant's prior offenses were sequential. Specifically, appellant argues the trial court erred in instructing the jury to find that he committed the second prior offense, family violence assault, subsequent to being convicted for the first prior offense, even though sequence was not alleged in the enhancement notice. In making this argument, appellant argues the only evidence on sequence was his estranged wife's testimony that it "happened in 2005." Appellant complains that State's Exhibit 28, the penitentiary packet for the family violence assault, was not admitted into evidence, and the date of the offense, November 7, 2005, "only appears in one space on the judgment."

Texas Penal Code section 12.42(d) governs punishment enhancement for habitual felony offenders:

[I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE ANN. § 12.42 (West Supp. 2017). The chronological sequence of events must be proved as follows: (1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; (4) the offense for which defendant presently stands accused is committed. *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008). The State carries the burden of proving beyond a reasonable doubt that a defendant's second previous felony conviction was committed after the defendant's first previous felony conviction became final. *Id.* at 291. And when there is no evidence to show that the offenses were committed and became final in the proper sequence, the defendant's sentence may not be enhanced under the State's habitual offender statutes. *Id.* If a defendant pleads true to an enhancement paragraph, that relieves the State of its evidentiary burden to prove the enhancement allegations, unless the record "affirmatively reflects" that the enhancements were improper. *Hopkins v. State*, 487 S.W.3d 583, 586 (Tex. Crim. App. 2016).

Here, appellant pled "true" to the enhancement allegations, which relieved the State of its burden to prove those allegations. *See id.* After relieving the State of its burden by pleading "true" to the enhancements, to prevail appellant had to show that the record affirmatively reflected that the enhancements were improper. *Id.* As in *Hopkins*, not only does appellant fail to direct us to any record evidence affirmatively showing that the enhancements were improper, the record actually supports the enhancement allegations. *See id.* Under these circumstances, we conclude the trial court correctly instructed the jury on punishment that appellant's prior offenses were sequential. *See id.* We overrule appellant's second issue.

In his third issue, appellant argues the trial court violated his right to due process by failing to explain in the jury charge that good conduct time was inapplicable. In effect, appellant is complaining of the inclusion in the punishment charge of the legislatively-mandated words contained in section 4(a) of article 37.07 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (West Supp. 2017). The instruction given in this case omitted only one sentence from the 37.07 instruction: "If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole." Because the minimum sentence in this case was twenty-five years, this sentence was inapplicable in this case, and appellant does not complain of the omission of this sentence.

At the time of trial, murder was an offense for which the 37.07 section 4(a) instruction was required. *See id.* art 37.07 § 4(a); art. 42.12 § 3g(a)(1). Therefore, because the trial judge in this case instructed the jury according to the legislative dictate expressed in article 37.07, section 4(a), he did not commit error. *Luquis v. State*, 72 S.W.3d 355, 365 (Tex. Crim. App. 2002). Further, the court of criminal appeals has determined that the 37.07 section 4(a) instruction does not violate due process. *Id.* We overrule appellant's third point of error.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

160638F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MARTIN GUTIERREZ JR., Appellant

No. 05-16-00638-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1512273-J.
Opinion delivered by Justice Bridges.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 2, 2018.