

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-23-00024-CR
No. 02-23-00025-CR

───────────────────────

LARRY J. PEDERSEN, Appellant

V.

THE STATE OF TEXAS

──────────────────────────────────────────────

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court Nos. 1598816D, 1608301D

──────────────────────────────────────────────

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Larry J. Pedersen appeals his sentences of life in prison for murder and ninety years' imprisonment for assault with a deadly weapon.[1] In two issues, Pedersen contends that the punishment jury charges were erroneous. We agree that the charges contained error, but we hold that the errors were harmless. In a third issue, Pedersen contends that the trial court erred by assessing duplicate costs. We sustain Pedersen's issue regarding costs, affirm the judgment in cause number 1598816D (02-23-00024-CR), modify the judgment in cause number 1608301D (02-23-00025-CR) to reflect court costs of $0, and affirm that judgment as modified.

## I. Background

Pedersen, Robert Watkins, Austin Tomlinson, and Lillie Miller frequented game rooms in which they would gamble and buy, sell, and consume methamphetamines. Over the course of several days in May 2019, the group had been taking drugs and visiting several game rooms. At some point during this time, the group was driving to Tomlinson's apartment when Pedersen, who always carried a gun, pulled a gun and attempted to shoot Tomlinson. The gun did not fire. Watkins and Pedersen wrestled over the gun, and Pedersen purportedly acted like the incident was a joke, commenting on the mess that would have resulted if the gun had fired. Despite the incident, the group proceeded to Tomlinson's apartment.

---

[1]Each offense was charged in a separate cause number. These separate causes have been consolidated on appeal.

Sometime later, Watkins left for work. Pedersen, Tomlinson, Miller, and a person named Susan ended up at Tomlinson's apartment again on May 14, 2019. At some point, Miller left to take Susan home. While she was gone, Watkins arrived at the apartment.

While the three men waited on Miller to return, Pedersen took out his gun and began pacing just inside of the apartment door. Tomlinson had been attempting to contact Miller while she was gone. When he did not hear from her, he jokingly commented that she had "left us here to kill each other." In that moment, Pederson shot Watkins in the left eye and shot Tomlinson in the head. He then fled on foot.

Miller returned to the apartment shortly after the shooting and found Watkins in the bathroom and Tomlinson lying face-down in a pool of blood in the kitchen. Watkins lost an eye but otherwise recovered from the shooting, but Tomlinson died a couple of days later.

Pedersen was indicted, and a jury convicted him of murder for Tomlinson's death and aggravated assault with a deadly weapon for shooting Watkins. At the sentencing hearing, the trial court admitted evidence, including Pedersen's stipulation, of Pedersen's two prior felony convictions and two prior state jail felony convictions. The jury assessed punishment, and the trial court sentenced Pedersen to life in prison on the murder conviction and ninety years in prison on the aggravated assault conviction. *See* Tex. Penal Code Ann. § 12.42(d) (requiring punishment as life or a term of twenty-five to ninety-nine years in prison for a felony offense when defendant was

3

previously convicted of two prior felony offenses and the second prior offense occurred after the first became final). The trial court entered judgment, and this appeal followed.

## II. Discussion

### A. Jury Charge

In his first and second issues, Pedersen contends that the trial court provided the jury with punishment charges containing an outdated parole instruction on good-conduct time. The trial court instructed the jury:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good[-]conduct time. Prison authorities may award good[-]conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good[-]conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good[-]conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good[-]conduct time might be applied to this defendant[,] if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good[-]conduct time. However, you are not to consider the extent to which good[-]conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the

> parole law may be applied to this particular defendant. Such matters come within the exclusive jurisdiction of the Pardons and Paroles Division of the Texas Department of Criminal Justice and the Governor of Texas.

Pedersen correctly points out that Article 37.07, Section 4(a) of the Code of Criminal Procedure was amended in 2019 and no longer refers to good-conduct time. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 2.08, 2015 Tex. Gen. Laws 2321, 2367–68 (amended 2019) (current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)). The current version of Section 4(a) refers only to parole. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

The State concedes that the trial court erred by including the outdated good-conduct time language. Because Pedersen was sentenced after the 2019 amendment's effective date, we hold that the trial court erred by instructing the jury on parole law using Section 4(a)'s pre-amendment language. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 2.08, 2015 Tex. Gen. Laws 2321, 2367–68 (amended 2019) (current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)); *Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at *4 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication).

When a jury charge contains error, the degree of harm that an appellant must show depends on whether the appellant preserved the complained-of error at trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Pedersen did not object to the erroneous charge. Thus, he did not preserve the jury-charge error. *See* Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App.

5

2021). When a defendant fails to preserve jury-charge error, we will reverse only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Taking the *Almanza* factors in turn, we first observe, as we did in *Weaver*, that the punishment charge itself militates against a finding of egregious harm. *See Weaver*, 2022 WL 2978730, at *4–5. The trial court instructed the jury that although it "may consider the existence of the parole law and good[-]conduct time," it was "not to consider the extent to which good[-]conduct time may be awarded to or forfeited by this particular

6

defendant." The jury was also instructed "not to consider the manner in which the parole law may be applied to this particular defendant."[2] We presume that the jury followed the trial court's charge. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Weaver*, 2022 WL 2978730, at *5. And although we agree with Pedersen that a good-conduct time instruction might imply the possibility of an early release, nothing in this record indicates that the jury "did not deliberate and decide his case based on the instructions contained in the charge as a whole." *Weaver*, 2022 WL 2978730, at *5. During deliberations, the jury requested the State's evidence of Pedersen's prior convictions. The jury also asked whether Pedersen would be eligible for parole on a life sentence and whether parole expires on a life sentence. The trial court referred the jury to its instructions and informed the jury that parole does not expire on a life sentence. The jury did not inquire about good-conduct time or its effect on the length of Pedersen's imprisonment. Thus, the record does not reflect that the good-conduct instruction affected the jury's punishment phase deliberation or its verdict. Considering the entire jury charge, this factor weighs against finding egregious harm.

We next consider whether the state of the punishment evidence made it more or less likely that the erroneous jury charge harmed Pedersen. *See id.* The jury heard

---

[2]Because jurors' parole discussions could result in enhanced punishments, instructions such as these are required to prevent juries from considering parole laws when assessing punishment. *See Arnold v. State*, 786 S.W.2d 295, 300 (Tex. Crim. App. 1990); *Rose v. State*, 752 S.W.2d 529, 532 (Tex. Crim. App. 1987), *abrogated on other grounds by Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009).

evidence of Pedersen's prior convictions in support of the State's habitual-offender notice. Pedersen's written stipulation to the habitual-offender evidence was also admitted into evidence. Pedersen stipulated that he had been previously convicted of engaging in organized crime, aggravated robbery, and two counts of vehicle theft. He further stipulated that his community supervision had been revoked in two cases, and that he had been sentenced to county jail for two offenses and a total of nine years in prison for the other two offenses. Neither side presented any additional evidence at the sentencing hearing.

Pedersen contends that the prior-conviction evidence "seems inadequate to support the draconian sentence[s] imposed." Yet he does not explain this conclusion. On the contrary, evidence of Pedersen's prior felony convictions supported the jury's harsh sentences. "Indeed, the legislative purpose behind the habitual felony-enhancement statute is to punish more harshly persons who repeatedly commit crimes." *Jordan v. State*, 256 S.W.3d 286, 293 (Tex. Crim. App. 2008); *see also Linley v. State*, 501 S.W.2d 121, 123 (Tex. Crim. App. 1973) ("[The legislature] contemplated an enhanced punishment for a defendant who, after previous convictions, does not reform because of his persistence in the perpetuation of crime."). Additionally, the offenses themselves were not pedestrian. Pedersen shot, without provocation, two people in the head, killing one and maiming the other. Thus, the punishment evidence weighs against finding egregious harm.

The third *Almanza* factor considers counsels' arguments. *See Almanza*, 686 S.W.2d at 171. During closing arguments, by his counsel, Pedersen mentioned good-conduct time. Specifically, Pedersen asserted that it is not possible to accurately predict "how the parole law or any good-conduct time might be applied to the defendant, if he's sentenced." Regardless, Pedersen admonished the jury that it could not use the parole possibility to arrive at a sentence by figuring out "how old you want him to be before he's released from prison, . . . then decide . . . [h]e'll get parole when one half of that time happens, . . . do the math and turn out with a sentence." Pedersen also reiterated his habitual-offender stipulation in his closing argument. The State did not mention parole or good-conduct time. Rather, the State asked the jury to consider the victims, noting that it chose not to put on witness testimony at the sentencing hearing. In its only reference to the sentence, the State asked the jury to start with a sixty-year sentence. Given the State did not mention good-conduct time or parole and Pedersen merely reiterated the trial court's admonishment not to consider such possibilities, this factor weighs against finding egregious harm.

Finally, under the "any other relevant information" factor, Pedersen reiterates his contention that but for the "defunct punishment charge" implying that he could shorten his term through good conduct, the jury would have assessed a shorter sentence. This concern, however, is addressed in the first *Almanza* factor. *See id.* He also contends that he should not have received a life sentence for murdering Tomlinson because of the "chaotic circumstances described by the State's witnesses." Pedersen

does not explain how this witness testimony at the guilt–innocence phase of trial should affect the jury's punishment assessment, and he cites no other relevant information to show harm. Accordingly, this factor weighs against finding egregious harm.

We conclude that Pedersen has not shown egregious harm from the admittedly erroneous punishment charge, and we overrule his first and second issues.

**B. Costs**

In his third issue, Pedersen contends that the trial court erred by assessing duplicate court costs. The State agrees, as do we.[3]

When a defendant is convicted of multiple offenses tried together—regardless of whether the offenses were committed in a single criminal episode—the trial court may assess costs and fees only once for "the highest category of offense that is possible based on the defendant's convictions." Tex. Code Crim. Proc. Ann. art. 102.073(a), (b). Because Pedersen was convicted of a first-degree felony offense in cause number 1598816D and a second-degree felony offense in cause number 1608301D, we delete the costs from the judgment in cause number 1608301D at his request. *See id.*; *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (noting that appellate court has authority to modify judgment "to make the record speak the truth"). We therefore sustain Pedersen's third issue.

---

[3]We must independently examine the merits of this issue because the State's concession is not conclusive. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002), *modified in part on other grounds sub silentio by Karenev*, 281 S.W.3d at 434.

### III.  Conclusion

Having overruled Pedersen's first and second issues and sustained his third issue, we affirm the trial court's judgment in cause number 1598816D, modify the trial court's judgment in cause number 1608301D to show court costs of $0, and affirm that judgment as modified.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 16, 2023