# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00266-CR

---

**Ryon ONeil Michael, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 483RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-20-5851-A, THE HONORABLE TANNER NEIDHARDT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Ryon ONeil Michael appeals his conviction for possession of methamphetamine in an amount of "four grams or more but less than 200 grams" with intent to deliver and his 30-year sentence. *See* Tex. Health & Safety Code § 481.112(d). He challenges (1) the sufficiency of the evidence supporting the conviction; (2) the sufficiency of the evidence supporting enhancement to a habitual level; and (3) the trial court's admission of the booking report. Finding the evidence sufficient to support the conviction and sentence and that the trial court did not abuse its discretion in admitting the booking report, we affirm.

## BACKGROUND

After watching Michael have "short-stay traffic" at two San Marcos hotels, which is, "typically, indicative of a drug transaction," the Hays County Narcotics Task Force had patrol officers conduct a traffic stop. They followed him out of Room 213 at the Motel 6 in San Marcos

before initiating the stop. Michael initially cooperated but, within minutes, tried to flee out of the passenger side window. Because Michael is a large, muscular man, it took two patrol officers, two undercover officers, and a taser to subdue him. During the struggle Michael spat out a baggie containing a white, crystal-like substance. Afterwards, officers obtained a search warrant for Room 213 and found baggies of methamphetamine; baggies of marijuana; sandwich bags; a small digital scale; a .22-caliber revolver; Michael's credit card with methamphetamine residue on it; and men's and women's clothing and sneakers. Officers found the contraband in multiple places, including inside a fake Arizona Iced Tea can with a screw top; a "Marijuana Jar"; a "Smelly Proof" bag; a duffle bag; and a shoe box. They found the gun in an otherwise empty drone box.

A grand jury indicted Michael on counts of unlawful possession of a firearm by a felon, possession of marijuana, and possession of methamphetamine with intent to deliver. At trial, several law enforcement officers involved in the traffic stop and the search of the motel room testified. The State offered several exhibits, including body and dash cam recordings of the traffic stop and photographs of the contents of Room 213 taken during the search. The jury heard that the methamphetamine Michael had spat out weighed 3.02 grams and that officers recovered 9.92 more grams from Room 213. The jury found Michael not guilty on the firearm count, but guilty on the other two counts. At the punishment hearing before the trial court, the State abandoned the marijuana count, and, after hearing evidence supporting the enhancement paragraphs, the trial court sentenced Michael as a habitual offender to 30 years' imprisonment. This appeal followed.

## ANALYSIS

### *Sufficiency to Prove Possession over Four Grams and Intent to Deliver*

Michael argues that although he was adequately linked to the methamphetamine he spat out during the traffic stop, the State did not adequately tie him to the larger quantity found

2

in Room 213 nor to the instruments of delivery found there. He notes that he was not the sole occupant of Room 213; no fingerprints tied him to the items seized; there was no evidence he had rented the room; and the only evidence suggesting he might have had possession or control of the items in Room 213 were the facts that he had been in the room and that a credit card bearing his name was found in the room.

*Standard of Review*

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

To prove possession with the intent to deliver a controlled substance, the State must show the defendant (1) knowingly exercised care, custody, control, or management over the controlled substance and (2) intended to deliver the controlled substance to another. Tex. Health & Safety Code § 481.112(a), (d); Tex. Penal Code § 1.07(a)(39) ("Possession" means "actual care, custody, control, or management.").

"When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the

3

contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).

*Application*

In this case, the contraband in the motel room was not in Michael's literal physical possession. Nor was his constructive possession, if any, exclusive. On the day of the arrest and search, officers observed Michael leave the room and drive off. Officer Lee Harris, who continued watching the room, observed a female go in and out of the room to do laundry. Later, when she walked out of the room again, she was detained. No one was in the room at the time the search warrant was executed. But there are sufficient independent facts and circumstances justifying an inference that Michael intentionally or knowingly exercised actual care, custody, control, or management over the contraband. In *Tate*, the court of criminal appeals reiterated a non-exclusive list of factors that may indicate a link connecting the defendant to the knowing possession of contraband. *Id*. at 414. The State presented evidence of many, but not all, of these factors:

- Some of the contraband was "in plain view"—Officers found most of the contraband in Room 213 in closed opaque containers, but the clear "Marijuana Jar" containing marijuana was visible on a shelf before the room was searched.

- Michael had "access" to it—Officer Benjamin Haverda testified he saw Michael and a female move from one motel into Room 213 of the Motel 6. He observed that, at both motels, the female mainly stayed in the room during the "short-stay traffic" while Michael responded to the visitors. Officer Haverda acknowledged that he "did not physically see money exchange hands" or "see drugs change hands." He "just saw interaction within the car."

- Michael was under the "influence of narcotics when arrested"—Camera footage captured a paramedic, who had come to check on Michael's physical state after being tased, ask him, "What did you take?" Michael answered, "Meth."

- Michael "possessed other contraband or narcotics when arrested"—Officer David Maddocks testified that Michael threw a marijuana cigarette out the driver's side window,

4

spat out the baggie of methamphetamine, and stored a "small bag of marijuana" in the driver's side door pocket of the vehicle.

- Michael made "incriminating statements when arrested"—Camera footage captured Michael asking, "Do you think that they'd be willing to work with me?" Officer Maddocks testified "that's verbiage I've heard before from individuals asking if they would be able to cooperate with law enforcement as a confidential informant."

- Michael "attempted to flee"—Camera footage captured Michael's attempt to escape through the passenger door window.

- Michael made "furtive gestures"—Officer Maddocks testified that instead of stepping out of the vehicle, Michael "reached over into an area where we could not see one of his hands."

- There was an "odor of contraband"—Officer Maddocks testified that he "detected the odor of marijuana coming from the vehicle," and Officer Lee Harris testified that the "Smelly Proof" bag in the motel room, which contained marijuana and methamphetamine, did not work.

- Other "contraband and drug paraphernalia" were present in the motel room—Officer Lee Harris showed photos he had taken of the sandwich bags, small digital scale, and the .22- caliber revolver found there during the search.

- Michael had "the right to possess" the motel room—Again, officers testified that Michael and the female moved into Room 213. Officer Harris testified the room contained "both male and female garments" and, as acknowledged by Michael, his credit card. Officer Harris's photographs support an inference that the occupants of the room lived out of it.

- The motel room where the drugs were found was "enclosed"—Room 213 is a regular motel room, and its curtains had been drawn.

- Michael's conduct "indicated a consciousness of guilt"— he initially tried to flee, and then inquired as to whether he could be an informant.

We conclude that the circumstantial evidence, when viewed together, constituted sufficient evidence connecting Michael to the actual care, custody, control, or management of the methamphetamine found in the motel room that he shared with the female. *See Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006) ("It is the logical force of the circumstantial evidence,

5

not the number of links, that supports a jury's verdict."). We turn to the sufficiency of the evidence of intent to deliver.

Intent to deliver, like possession, can be established by circumstantial evidence. Certain factors may be relevant to the question of intent to deliver. *See, e.g.*, *Biggers v. State*, 634 S.W.3d 244, 253 (Tex. App.—Texarkana 2021, pet. ref'd). And again some—including "the nature of the location" of arrest, "the quantity of controlled substance" possessed, its "manner of packaging," "the presence of drug paraphernalia," and "the defendant's status as a drug user"— are present here. *See id.*

- Michael was arrested on Mill Street; Officer Haverda testified that the plain-clothes officers conducting surveillance had followed Michael from the motel parking lot to "Jackson Lane where he proceeded to Thorpe Lane. And then . . . he proceeded to Mill Street" where the uniformed officers conducted the traffic stop.

- Forensic Scientist Tres Guerra testified that the bag associated with Michael contained methamphetamine and weighed 3.02 grams. Officer Tommy Villanueva testified this was a purchaser "quantity"; "[t]ypically, a user would purchase anywhere between an eight ball [3.5 grams or 1/8 of an ounce] and a gram worth, maybe even less than a gram." Guerra testified that the bag associated with Michael and the female contained methamphetamine and weighed 9.92 grams. Officer Villanueva testified this was a "quantity" indicative of narcotic sales.

- Officer Villanueva testified that the "individually packaged amounts of drugs" also indicated narcotic sales.

- Officer Lee Harris testified about the significance of the drug paraphernalia in the motel room including the digital scale ("they all use digital scales in order to appropriately deal out the narcotics that they're selling"), and the sandwich bags ("sandwich bags are what the drug dealers use to distribute the product to their customers").

- Again, Michael admitted to the paramedic that he had taken methamphetamine. He can also be heard, earlier in the stop, telling officers he has a problem with it. He later attributed his attempted flight and fighting the officers to the fact that he was "high."

Although the State presented no evidence that Michael had rented the room or was tied to the room by fingerprints, it presented evidence that: he moved into the room with the female;

6

they alone came and went from the room; he responded to short-stay traffic; the room contained his credit card; and when he left the room he possessed the same type of narcotics officers later found during the search of the room. The logical force of the combined pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that Michael possessed the methamphetamine with the intent to deliver it. *See Anderson v. State*, 416 S.W.3d 884, 890 (Tex. Crim. App. 2013) ("From the 8.51 grams of methamphetamine that were strewn throughout the truck, it appears that Appellant and Sherber intended to sell smaller amounts of methamphetamine to other people in the future."). We overrule Michael's complaints about the sufficiency of the evidence to support his conviction.

### *Sufficiency to Prove Enhancements*

Michael next argues that no competent evidence connected him to the prior convictions in the State's Exhibits.

### *Applicable Law and Standard of Review*

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* "While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a

prior conviction and the defendant's identity as the person convicted." *Id.* at 921-22. Whatever the evidence, the factfinder engages in a deductive, discrete fact-finding process to determine whether the State has proved that the enhancement allegations are true. *Jordan v. State*, 256 S.W.3d 286, 291 (Tex. Crim. App. 2008). In a challenge to the sufficiency of the evidence to support a finding of true to enhancement allegations, we apply the sufficiency standard of review set out in *Jackson*. *Henry v. State*, 509 S.W.3d 915, 919 (Tex. Crim. App. 2016); *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016).

*Application*

At the punishment hearing, the State introduced, and the trial court admitted, State's Exhibits P1, P2, and P3. P1 is the Hays County Sheriff's Office Booking Report; P2 is the certified pen packet containing the 2015 judgment of conviction for second-degree possession of a controlled substance; and P3 is the certified pen packet containing the 2005 judgment revoking community supervision for third-degree failure to stop and render aid, the 2005 judgment of conviction for second-degree burglary of a habitation, the 2008 judgment of conviction for state jail forgery, and the 2008 judgment of conviction for second-degree aggravated assault.

The State used P1 as a reference to prove that Michael was the person in the judgments. Investigator John Paul Garza testified that he compared P1 to P2 and P3 and found the information matched. They contained the same name (Ryon) or alias (Ryan), the same date of birth, and the same FBI number. All contained photographs of Michael. Investigator Garcia, a certified expert in ink-to-ink fingerprint comparisons, also compared the fingerprints in P1 to those in P4, which matched the cause number in P2, but contained legible fingerprints, and found a match. He also found the cause numbers in the exhibits appear in Michael's criminal history, and

8

the same SID number appeared in P2, P3, and the criminal history. Finally, Michael stipulated to the judgment in P2.

Considering the above evidence in the light most favorable to the trial court's finding, we hold that a rational trier of fact could have found the two elements proving the enhancements (the prior convictions exist and Michael is linked to them) beyond a reasonable doubt. *Flowers*, 220 S.W.3d at 921; *Henry*, 509 S.W.3d at 919; *Wood*, 486 S.W.3d at 589. We overrule Michael's complaint about the sufficiency of the evidence to prove the enhancements.

### *Admission of the Jail Packet*

As noted above, the State used P1, the Hays County Sheriff's Office Booking Report, to tie Michael to the prior judgments. Michael argues that the trial court erred in admitting the booking report over his objection that the State failed to prove a chain of custody on it.

### *Applicable Law and Standard of Review*

Authentication of evidence is a condition precedent to its admissibility. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Texas Rule of Evidence 901(a) provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901. The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder. *Tienda*, 358 S.W.3d at 638. Texas law recognizes that certain documents are self-authenticating. Rule 902 identifies certain evidence as self-authenticating and dispenses with Rule 901's requirement of extrinsic evidence of authenticity for that evidence. Tex. R. Evid. 902. A document may be authenticated under either Texas Rule of Evidence 901 or 902 and need not be authenticated under both. *Reed v. State,* 811 S.W.2d 582, 586 (Tex. Crim. App. 1991). The sufficiency of an evidentiary predicate is within

9

the trial court's discretion, and appellate courts will not overturn the decision to admit evidence unless the trial court abused its discretion. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015).

*Application*

Investigator John Paul Garza testified that another investigator picked up the packet from the jail. Michael argues that while a document under physical seal may be safely presumed to lack tampering, "a document bearing no more than a certification by a records custodian provides no such safe presumption when the person who accepted the documents from the certifying official is not present to testify receiving the documents in the form presented to the court." But a proper certification by the custodian of records at a government institution is sufficient authentication under Rule 902(4) of a copy of a public document contained in that institution's files. *See Flowers*, 220 S.W.3d at 922; *State v. Handsbur*, 816 S.W.2d 749, 750 (Tex. Crim. App. 1991). Here, the booking report was sufficiently authenticated; it contained a certification ("that the attached documents, consisting of 11 page(s), and attached hereto are true and correct copies of the original public documents filed and recorded with this department") from the county sheriff's office that was signed by the custodian of records. Absent evidence of tampering or other fraud, which was not presented here, problems in the chain of custody of an otherwise authenticated document do not affect the admissibility of the evidence. *See Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007). "Instead, such problems affect the weight that the fact-finder should give the evidence." *Id.* Accordingly, the trial court did not abuse its discretion in admitting the booking report over Michael's chain-of-custody objection. *Butler*, 459 S.W.3d at 600. We overrule Michael's evidentiary complaint.

## CONCLUSION

Having overruled Michael's appellate complaints, we affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly, and Ellis

Affirmed

Filed:   February 4, 2026

Do Not Publish

11